

**IT IS ORDERED as set forth below:**

**Date: May 28, 2026**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NUMBER **25-64063-PMB** |
| **OLAJUWON AKEEM MEADOWS,** | |
| Debtor. | CHAPTER 13 |
| **OLAJUWON AKEEM MEADOWS,** | |
| Movant, | |
| v. | CONTESTED MATTER |
| **VIREN R. PATEL,** | |
| Respondent. | |

**ORDER GRANTING IN PART AND**
**DENYING IN PART DEBTOR'S MOTION FOR SANCTIONS**

This matter is before the Court on the *Verified Motion for Sanctions for Willful Violation of*

*the Automatic Stay and Memorandum of Law in Support* filed by the above-named *pro se* Debtor

(the "Debtor") on February 27, 2026 (Docket No. 33)(the "Motion"). In the Motion, the Debtor

seeks sanctions against Respondent Viren R. Patel ("Mr. Patel") for alleged violations of the automatic stay that occurred before this Chapter 13 case was dismissed.

Procedural Background

The Debtor filed this Chapter 13 case on December 2, 2025 at 11:49 a.m. (Docket No. 1). The Chapter 13 Trustee (the "Trustee") subsequently filed an *Objection to Confirmation of Plan and Motion to Dismiss* on January 23, 2026 (Docket No. 23)(the "Trustee's Motion to Dismiss"). The Trustee's Motion to Dismiss came before the Court for hearing on February 19, 2026, and both the Chapter 13 Trustee and the Debtor appeared (the "Dismissal Hearing"). At the Dismissal Hearing, the Trustee requested that this case be dismissed, mainly for issues related to the funding of the Debtor's Chapter 13 Plan. The Debtor opposed the Chapter 13 Trustee's request for dismissal. In connection with his opposition, the Debtor alleged that Mr. Patel had foreclosed on his home and was attempting to dispossess him in violation of the automatic stay, and that the Debtor wanted an opportunity to file a pleading related to that alleged stay violation. Because grounds existed to dismiss the case, the Court dismissed this case but explained that the case would remain open for thirty (30) days to give the Debtor an opportunity to file pleadings related to the alleged stay violation. On February 23, 2026, the Court entered an *Order Dismissing But Not Closing Case* reflecting its ruling at the Dismissal Hearing (Docket No. 27).

After the Dismissal Hearing, on February 20, 2026, Mr. Patel, proceeding *pro se*, filed an *Emergency Motion for Relief from Stay* (the "MFR"). In his MFR, Mr. Patel explained that he had purchased the Debtor's home located at 2494 Horse Saddle Way, Dacula, Georgia 30019 (the "Property") on December 2, 2025, at a sheriff's sale in Gwinnett County, Georgia *before* the Debtor filed this Chapter 13 case. Mr. Patel, in his MFR, requested either relief from the automatic stay so that he could pursue a dispossessory action against the Debtor or, alternatively, confirmation from the Court that the automatic stay did not apply to the Property because it was not property of

the Chapter 13 estate. On February 25, 2026, the Court entered an *Order Denying Motion for Relief from Stay*, denying the MFR as moot because there was no longer an automatic stay since this case had already been dismissed (Docket No. 30).

On February 27, 2026, the Debtor filed the Motion, alleging that Mr. Patel had violated the automatic stay when he filed a dispossessory action against the Debtor and when the sheriff's deed for the Property was recorded (the "Sheriff's Deed").[1] In his Motion, the Debtor requests actual and punitive damages resulting from the alleged stay violation, and that the Court declare the filing of the dispossessory and the recording of the Sheriff's Deed void. A week later, on March 3, 2026, the Court set the Motion for an evidentiary hearing on April 13, 2026 (the "Evidentiary Hearing"). A few days before the Evidentiary Hearing, on April 9, 2026, the Debtor filed a *Motion for Default Judgment and Voiding of Sale* (Docket No. 37)(the "Default Motion") and a *Request for Clerk's Entry of Default* (Docket No. 38)(the "Default Request"), asserting that because Mr. Patel had not filed a response to the Motion he had therefore defaulted and requesting the Clerk enter a default against Mr. Patel, respectively.[2]

At the Evidentiary Hearing, the Debtor, the Debtor's wife, Mr. Patel, and the Chapter 13 Trustee appeared. The Court heard testimony from the Debtor, the Debtor's wife, and Mr. Patel and admitted into evidence Exhibits D-1 through D-17 offered by the Debtor, before taking the Motion under advisement.

---

[1] At the Evidentiary Hearing, Mr. Patel testified that the Gwinnett County Sheriff prepared and recorded the Sheriff's Deed after Mr. Patel paid a fifty-dollar ($50) fee.

[2] At the Evidentiary Hearing, the Court denied the Default Motion and explained to the Debtor that because this matter is a contested matter rather than an adversary proceeding, Federal Rule of Bankruptcy Procedure 7012 does not apply and therefore Mr. Patel did not default by not filing a pleading in response to the Motion.

Factual Background[3]

The Debtor purchased the Property sometime prior to 2020, and at some point fell behind on his homeowner's association dues to the Del Mar Club at Harbins Homeowners Association, Inc. (the "HOA"). The HOA filed an action over the unpaid fees in the Superior Court of Gwinnett County (the "Superior Court"), which resulted in an October 6, 2023, *Final Order and Judgment of Foreclosure* in Civil Action File No. 23-A-05071-10 (the "Foreclosure Order"). The Foreclosure Order authorized the HOA to "judicially foreclose" on the Property for the $14,479.64 judgment granted in the Foreclosure Order, plus $5,655.35 from a prior judgment against the Debtor, [4] and for the amount of the HOA's "statutory lien upon the Property at the time of the judicial foreclosure sale."

The Debtor attempted to remedy and pay the arrearage owed to the HOA but was unable to satisfy the obligation. As a result, the HOA proceeded to exercise the relief it was granted in the Foreclosure Order and foreclose on the Property. As a result, on the morning of December 2, 2025, at approximately 11:00 a.m., the Property was sold pursuant to O.C.G.A. § 44-3-232(c) at a sheriff's sale conducted at the Gwinnett County Justice Center. At the sheriff's sale, Mr. Patel made the highest bid and purchased the Property for $36,100. *See* Sheriff's Deed. That same morning at 11:49 a.m., after Mr. Patel had purchased the Property at the sheriff's sale, the Debtor filed this Chapter 13 case. Later that day, after the sheriff's sale and after the Debtor filed this case, Mr. Patel went to the Property and informed the Debtor that he had purchased it.

---

[3] This Order constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate in this Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

[4] The Foreclosure Order states that the $5,655.35 prior judgment against the Debtor was rendered in Superior Court Civil Action File No. 19-A-06497-10.

4

During his visit to the Property on December 2, 2025, Mr. Patel and the Debtor discussed the Debtor potentially paying rent to avoid being dispossessed from the Property, and the Debtor informed Mr. Patel that he had filed this Chapter 13 case. The following day, December 3, 2025, the Debtor again informed Mr. Patel, this time via text message, that he had filed for bankruptcy but declined to share the case number for this Chapter 13 case with Mr. Patel. Mr. Patel took no action to determine whether the Debtor had filed a bankruptcy case, and instead, later on December 3, 2025, initiated a dispossessory proceeding against the Debtor (Case No. 25M56872)(the "First Dispo") in the Magistrate Court of Gwinnett County, Georgia (the "Magistrate Court"). When Mr. Patel filed the First Dispo, he had been advised that this case had been filed and proceeded without making any effort to confirm or disprove the filing. On January 13, 2026, the sheriff caused the Sheriff's Deed for the Property to be recorded in the Gwinnett County real estate records.

The Magistrate Court set the First Dispo for a hearing on February 25, 2026. By then, this Chapter 13 case had been dismissed and Mr. Patel's MFR had been denied. At that hearing, the Magistrate Court transferred the First Dispo to the Superior Court because the Debtor's counterclaim exceeded the Magistrate Court's jurisdiction. Separately, prior to the Evidentiary Hearing, the Debtor initiated an action against Mr. Patel in the Superior Court to set aside the foreclosure of the Property (Case No. 26-A-01556-11)(the "Wrongful Foreclosure Case").[5]

---

[5] After the Evidentiary Hearing, on May 11, 2026, the Debtor filed *an Emergency Motion for Interim Injunction and Stay of State Court Proceedings* (Docket No. 40)(the "Post-Hearing Motion"), and on May 14, 2026, filed an *Emergency Supplemental Notice of Egregious Post-Dismissal Stay Violations and Emergency Threat to Debtor's Liberty* (Docket No. 41)(the "Supplemental Notice"). In his Post-Hearing Motion, the Debtor requests that the Court enjoin Mr. Patel from dispossessing the Debtor from the Property. The Debtor also explains that in the Wrongful Foreclosure Case he commenced, the Superior Court has ordered the Debtor to pay $10,380 into the Superior Court's registry, and he requests the Court stay that case. In his Supplemental Notice, the Debtor alleges that Mr. Patel filed a *Motion for Contempt* in the Wrongful Foreclosure Case. The events described in the Post-Hearing Motion and the Supplemental Notice occurred after this Chapter 13 case was dismissed and the stay terminated, and are therefore not relevant to the Court's analysis of the stay violations alleged in the Motion. Moreover, as discussed *infra*, given that the sale of the Property and the recording of the Sheriff's Deed are valid and did not violate the automatic stay, the Post-Hearing Motion should be denied except to the extent that the First Dispo is void *ab initio* because it did violate the stay.

Against this backdrop, the Court turns to whether the Property became property of the estate upon the filing of this bankruptcy and whether Mr. Patel violated the automatic stay.

Legal Analysis

I.      The Foreclosure

In Georgia, most foreclosures of real property are nonjudicial foreclosures conducted pursuant to a power of sale contained in a deed to secure debt, which are conducted without the need for judicial involvement. *See* O.C.G.A. §§ 44-14-160 through 165.  Georgia law, however, separately provides for the foreclosure of homeowners' association liens under the Georgia Property Owners' Association Act, O.C.G.A. §§ 44-3-220 through 44-3-235. Unlike a typical nonjudicial foreclosure, a homeowners' association foreclosure requires judicial involvement in the form of a judgment and order and is conducted through a sheriff's sale. *See* O.C.G.A. § 44-3-232(c)(providing that association liens may be foreclosed "in the same manner as other liens for the improvement of real property").[6]

Under Georgia law, a debtor whose property is sold at a valid nonjudicial foreclosure sale loses his remaining ownership interest in the property[7] upon completion of the foreclosure sale, not upon the later recording of the deed. *See In re Taylor*, No. 16-69706-PMB, 2018 WL 1267998, at *5 (Bankr. N.D. Ga. Mar. 8, 2018)(explaining that a debtor's "right to redeem terminates as of the time that the foreclosure sale is cried and the bid is accepted")(citing *Tampa Inv. Grp., Inc. v. Branch Banking & Tr. Co.*, 290 Ga. 724, 726, 723 S.E.2d 674, 677 (2012)). As this Court has previously explained, once a foreclosure sale is concluded and the successful bid accepted, the

---

[6] Georgia law thus treats HOA liens similarly to mechanics' and materialmen's liens, which are likewise obtained through judicial process, *see* O.C.G.A. §§ 44-14-360 through 44-14-369, and foreclosed by a sheriff's sale. *See* Daniel F. Hinkel, Georgia Construction Mechanics' and Materialmen's Liens § 11:10 (4th ed.), Georgia Construction Mechanics' and Materialmen's Liens with Forms (March 2026 Update); O.C.G.A. §§ 9-13-140 through 9-13-178.

[7] A borrower who executes a deed to secure debt transfers title to the lender and retains only a right to redeem the property.

6

debtor no longer retains a legal or equitable interest in the property sufficient to bring it into the bankruptcy estate under 11 U.S.C. § 541. *See Id.*

The Debtor argues that because the Sheriff's Deed was recorded post-petition, the foreclosure sale was not final until January 13, 2026, when the Sheriff's Deed was recorded. From this, the Debtor contends that the Property became property of the estate when he filed this bankruptcy case and that the post-petition recording of the Sheriff's Deed violated the automatic stay, rendering both the recording and the foreclosure sale void. The flaw in the Debtor's argument is that it assumes his ownership interest in the Property survived the foreclosure sale and continued until the Sheriff's Deed was recorded.

Nothing in Georgia law suggests that a foreclosure conducted by sheriff's sale pursuant to Georgia Property Owners' Association Act operates differently from a nonjudicial foreclosure sale in terms of determining when a debtor's ownership interest is extinguished.[8] To the contrary, the Court finds no basis to conclude that the timing of the extinguishment differs merely because the sale occurs because of a judgment and order and is conducted through a sheriff's sale rather than under a power of sale. Accordingly, the sheriff's sale conducted on December 2, 2025, extinguished the Debtor's ownership interest in the Property when the sale was cried and Mr. Patel's bid was accepted, which occurred before the Debtor filed this Chapter 13 case. Because the Debtor held no legal or equitable ownership interest in the Property at the time the petition was filed, the Property did not become property of the estate under 11 U.S.C. § 541(a), and the post-petition recording of the Sheriff's Deed did not violate the automatic stay and is not void.[9]

---

[8] In fact, the process for conducting a nonjudicial foreclosure sale and a sheriff's sale in Georgia are remarkably similar because a nonjudicial foreclosure sale "shall be advertised and conducted at the time and place and in the usual manner of the <u>sheriff's sales</u> in the county in which such real estate . . .is located." O.C.G.A. § 44-14-162(a)(emphasis added).

[9] The Debtor also relies on O.C.G.A. § 23-4-35 and argues that the foreclosure sale was not final because it was never judicially confirmed. The Debtor's reliance is misplaced—O.C.G.A. § 23-4-35 provides that sales conducted pursuant to decrees in equity are subject to judicial confirmation, and Georgia courts have recognized that the statute applies to

II.    The Violation of the Automatic Stay

The law in this area is quite clear. Under 11 U.S.C. § 362(a), the automatic stay comes into effect when a bankruptcy case is filed. That stay is intended to provide the debtor with a "breathing spell" from creditor activity. *E.g., In re Thomas*, 319 B.R. 910, 912 (Bankr. M.D. Ga. 2004). Virtually all creditor activity is prohibited by the automatic stay. The stay applies whether creditors know about it or not, and in this Circuit, actions taken in violation of the stay are void. *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984); *Thomason v. Chestatee Cmty. Ass'n (In re Thomason)*, 493 B.R. 890, 896 (Bankr. N.D. Ga. 2013).

That brings the Court to the Debtor's remaining request—that he be awarded damages for Mr. Patel's alleged stay violation. Section 362(k) of the Bankruptcy Code authorizes damages for willful violations of the automatic stay and provides that an individual injured by such a violation "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In the Eleventh Circuit, a violation is willful if the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1555 (11th Cir. 1996). The debtor bears the burden of proving a willful violation by a preponderance of the evidence. *Spinner v. Cash In A Hurry, LLC (In re Spinner)*, 398 B.R. 84, 94–95 (Bankr. N.D. Ga. 2008). Importantly, a debtor need not show that the creditor specifically intended to violate the stay; it is enough that the creditor knew of the bankruptcy filing and intentionally committed the act that violated the

---

equitable foreclosure proceedings and similar equitable sales. *See Brackett v. Allison*, 119 Ga. App. 632, 634, 168 S.E.2d 611, 613 (1969); *see e.g.*, *Pack v. Mahan*, 294 Ga. 496, 500 n.2 (2014)(noting that "sales under decrees in equitable partition proceedings" are subject to O.C.G.A. § 23-4-35). This case, however, did not involve an equitable foreclosure decree. Rather, the Property was sold pursuant to a statutory foreclosure mechanism authorized under the Georgia Property Owners' Association Act and conducted through a sheriff's sale. Accordingly, O.C.G.A. § 23-4-35 has no application here.

8

stay. *See e.g. In re Caffey*, 384 F. App'x 882, 885 (11th Cir. June 23, 2010)(holding that a creditor violated the stay after receiving notice of the bankruptcy filing).

Even where a debtor no longer holds legal title to real property, a debtor's continued possessory interest is protected by the automatic stay. *See In re Coates*, 108 B.R. 823, 825-26 (Bankr. M.D. Ga. 1989)(citing *In re Schewe*, 94 B.R. 938 (Bankr.W.D.Mich.1989)). Accordingly, a purchaser at a foreclosure sale may not dispossess a debtor without first obtaining relief from the automatic stay, even where the debtor's ownership interest has already been extinguished.

In this case, although the Property itself was not property of the estate when this case was filed, the Debtor nevertheless retained a possessory interest in the Property after the foreclosure sale.[10] On December 2, 2025, Mr. Patel learned from the Debtor that this bankruptcy case had been filed. The following day, despite again being advised of the bankruptcy filing, Mr. Patel initiated the First Dispo without taking any action to confirm whether a bankruptcy case had in fact been filed or seeking relief from stay from this Court. Therefore, Mr. Patel willfully violated the automatic stay when he filed the First Dispo even after receiving notice that the Debtor had filed bankruptcy. Although Mr. Patel may have believed that the Property was no longer property of the estate, that belief did not excuse him from obtaining relief from stay before pursuing dispossession of the Debtor's possessory interest in the Property. Accordingly, the Court concludes that the filing of the First Dispo constituted a willful violation of the automatic stay and is void *ab initio*.

---

[10] The Debtor's possessory interest was at least as a tenant at sufferance.  His interest may have become more than that of a mere tenant at sufferance through the actions of Mr. Patel. Under Georgia law, "[i]t takes very little to convert a tenancy at sufferance into a tenancy at will," including a demand for rent or permission to remain. *In re Bowman*, 555 B.R. 918, 923 (Bankr. S.D. Ga. 2016)(quoting *Willis v. Harrell*, 118 Ga. 906, 909, 45 S.E. 794 (1903)). Here, post-petition, Mr. Patel discussed with the Debtor the prospect of paying rent in exchange for remaining at the Property. The Court need not conclusively resolve whether the Debtor was a tenant at sufferance or a tenant at will, however, because even a holdover possessory interest is sufficient to invoke the protections of the automatic stay. *See In re Cook*, 614 B.R. 635, 647 n.4 (Bankr. N.D. Ga. 2020).

**Conclusion**

The Debtor's ownership interest in the Property terminated when the sheriff's sale concluded and Mr. Patel's bid was accepted on December 2, 2025, prior to the filing of this bankruptcy case. As a result, the Property did not become property of the estate under 11 U.S.C. § 541(a), and the post-petition recording of the Sheriff's Deed did not violate the automatic stay. The Debtor, however, remained in possession of the Property after the foreclosure sale and therefore retained a possessory interest protected by the automatic stay. By filing the First Dispo after receiving notice of the bankruptcy filing and without first obtaining relief from stay, Mr. Patel willfully violated the automatic stay.

Accordingly, in light of the foregoing, and after review of the Motion and docket in this matter, it is hereby

**ORDERED** that the Motion is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Default Motion is denied.

2. The Property was not property of the estate as defined in 11 U.S.C. § 541 at the time this case was filed.

3. Because the Property was not property of this bankruptcy estate, the recording of the Sheriff's Deed did not violate the automatic stay.

4. The filing and prosecution of the First Dispo nevertheless violated the automatic stay of 11 U.S.C. § 362(a), as the Debtor still maintained a holdover possessory interest in the Property at the time of the filing of the First Dispo, and the First Dispo is thus void.

5. Mr. Patel filed the First Dispo in willful disregard of the filing of this case and thus is subject to a punitive sanction. In view of Mr. Patel's background, the Court does not

find his assertions credible that he was unaware that his actions might violate the stay. The Court finds that an appropriate sanction is the sum of $10,380 (the "Sanction").

6. Mr. Patel shall either pay the Sanction to the Debtor or shall offset it against any rent he asserts the Debtor owes him for occupancy of the Property. If Mr. Patel does not make an election between these two remedies and communicate same to the Debtor in writing (by letter, text, or email) within ten (10) days of the date of the entry of this Order, he shall be deemed to have elected the latter remedy.

7. The Post-Hearing Motion is denied except that, as otherwise determined herein, the First Dispo is void *ab initio* and thus cannot be further prosecuted.

The Clerk's Office is directed to serve a copy of this Order upon the Debtor, the Respondent, and the Chapter 13 Trustee.

**[END OF DOCUMENT]**